UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ASSAM IYSHEH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-542 |
| | ) | Judge Phillips |
| CELLULAR SALES OF TENNESSEE, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION**

This civil action arises from plaintiff Assam Iysheh's employment as a Dealer (a.k.a. Sales Representative) with defendant Cellular Sales of Tennessee, LLC ("Cellular Sales"). Plaintiff claims that he was subjected to religious discrimination, a hostile work environment, and retaliation because of his race, color, religion, and national origin [Doc. 1 at ¶¶ 1, 42; Doc. 14-3 at ¶ 13]. Cellular Sales has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) and to compel the arbitration of all claims. After carefully considering the motion, supporting exhibits, and briefs [Docs. 10, 11, 19] and plaintiff's response in opposition [Doc. 14], the motion is ripe for determination.

For the reasons set forth herein, defendant's motion to compel arbitration [Doc. 10] will be **GRANTED**.

**I.     Relevant Facts**[1]

Cellular Sales is an authorized Verizon Wireless dealer [Doc. 10-1 at ¶ 3]. Cellular Sales operates a number of retail stores in Tennessee, offering wireless equipment, accessories, and Verizon Wireless services to consumers [*Id.*]. All of these activities involve the sale of goods or services through interstate commerce by Dealers employed by the company [*Id.*].

Plaintiff obtained his GED in 2011 and attended Southwest Community College in Memphis for one semester [Doc. 14-3 at ¶ 2]. He sold electronics at HH Gregg in Knoxville for approximately three years until he was recruited to work for Cellular Sales [*Id.*; Doc. 1 at ¶ 18]. Cellular Sales hired plaintiff as a Dealer in the Knoxville, Tennessee area, on September 9, 2015 [Doc. 10-1 at ¶ 4].[2] Plaintiff generally worked in the company's stores located at Deane Hill, Cedar Bluff, Farragut, and West Town Mall [*Id.*].

Although he "do[es] not recall signing" it [Doc. 14-3 at ¶ 3], defendant's records show that plaintiff received a Dealer Compensation Agreement (the "Agreement") and electronically signed it at 6:13 a.m. on September 9, 2015 [Doc. 10-1 at ¶ 5].[3] Execution

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

[2] Although the discrepancy is not material for purposes of the instant motion, the complaint alleges that Cellular Sales officially hired plaintiff on September 11, 2015 [Doc. 1 at ¶¶ 12, 20].

[3] Plaintiff suggests, without explanation, that the Agreement was signed at 9:13 a.m., rather than at 6:13 a.m. "as the Defendant contends" [Doc. 14 at ¶ 3]. Cellular Sales insists that the time of 6:13 a.m. is "clearly shown on the signature line of the agreement" [Doc. 19 at p. 7]. The Agreement contains the signature date of "09/09/2015" and the time of "6:13:28 AM PDT" [Doc. 10-1 at p. 13]. The Court assumes, for purposes of the instant motion, that "PDT" refers to Pacific Daylight Time and further assumes that plaintiff intends to suggest that he signed the Agreement at 9:13 a.m. Eastern Daylight Time. This distinction, if any, is not material to the instant dispute.

of the Agreement was a term and condition of plaintiff's employment with Cellular Sales [*Id.*].

Relevant to the instant motion, the Agreement contains an arbitration clause. The Agreement contains the following admonition prior to the arbitration provision: "**READ THIS NEXT SECTION CAREFULLY AS IT AFFECTS YOUR RIGHT TO PURSUE CLAIMS AGAINST CELLULAR SALES**" [Doc. 10-1 at p. 11]. The pertinent terms of the arbitration clause, entitled "DISPUTE RESOLUTION," are as follows:

> a. *Applicable Rules*. Any controversy or dispute between Dealer and Cellular Sales or any of its owners, employees, officers, agents, affiliates, or benefit plans, arising from or in any way related to Dealer's employment by Cellular Sales, or the termination thereof, including but not limited to the construction or application of this Agreement, shall be resolved exclusively by final and binding arbitration administered by JAMS under its Employment Arbitration Rules & Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute. …The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, validity, applicability, enforceability, or formation of this Agreement.
>
> b. *All Disputes Must Be Arbitrated*. It is the intent of the parties hereto that all disputes between them must be arbitrated, expressly including, but not limited to, (i) any dispute about the interpretation, validity or enforcement of this Agreement, (ii) any claim of employment discrimination under federal or state law, such as, but not limited to, discrimination based on age, disability, national origin, race, or sex, … and (vii) any other claim of any nature, whether contractual, tortious, common-law, statutory, or regulatory, arising out of, or in any way related to, Dealer's employment with Cellular Sales, the termination thereof, or any other matter incident thereto. The intent of this provision is that all disputes between the Parties, of any nature, touching on or relating to this Agreement or any aspect of Dealer's employment with Cellular Sales, including the termination thereof, must be resolved solely by arbitration… .

[*Id.* at pp. 11—12].

Cellular Sales utilizes an online software system called ExactHire to complete its onboarding process for new employees [Doc. 19-1 at ¶ 3]. Through ExactHire, new employees complete and agree to their onboarding forms and employment policies, including the Agreement [*Id.*]. Employees are required to review each of these forms online by scrolling to the bottom of each document, and then to electronically sign the document by entering their name and password to ensure authentication and completion [*Id.*]. At that time, an electronic timestamp is created for the document [*Id.*].

Cellular Sales' records reveal that plaintiff received the email link to complete his pre-employment forms from ExactHire on September 8, 2016 [*Id.* at ¶ 4]. On that date, plaintiff and Shannon Twilla, Operations Manager of the Knoxville Market of Cellular Sales, engaged in an email conversation in which he confirmed receiving the email link [*Id.* at ¶ 4]. Ms. Twilla also informed plaintiff that he only needed to complete the forms online, rather than print and bring them to her [*Id.*]. Plaintiff and Ms. Twilla had another email conversation on September 9, 2015, shortly after he had completed most of his forms, including the Agreement [*Id.*]. Plaintiff was required to complete these forms prior to his final, on-site onboarding meeting on September 10, 2015, when he received his dealer code and badge [*Id.* at ¶ 5]. Plaintiff had continued access to all of these forms, including the Agreement, and the ability to print them at any time by logging into ExactHire [*Id.* at ¶ 8]. Plaintiff never requested additional time to review or confer with legal counsel regarding the forms or the Agreement [*Id.* at ¶ 10]. He never protested or objected to the arbitration provision in the Agreement, nor did he ask any questions regarding the arbitration provision [*Id.*].

Plaintiff states "[i]f I did electronically sign the Dealer Compensation Agreement on September 9, 2015, it would have been done under significant time pressure upon presentment by Cellular Sales amidst on-site training while completing final on boarding paperwork and immediately before getting my badge printed" [Doc. 14-3 at ¶ 4]. Plaintiff says he had no time to consider the arbitration provision in the Agreement and he was not told about it [*Id.* at ¶¶ 5—6]. Plaintiff never received a copy of the Agreement until after this case was filed [*Id.* at ¶ 7]. Plaintiff never received a copy of any rules, procedures, or forms to take home and read, or to keep for his records [*Id.* at ¶ 8]. Indeed, plaintiff did not know he "may have signed an arbitration agreement until after this lawsuit was filed" [*Id.* at ¶ 9]. Plaintiff further complains that the JAMS fee schedule is not available or accessible to him and he believes that "arbitration would be prohibitively expensive" for him [*Id.* at ¶ 12].

Plaintiff was very successful at Cellular Sales. He was "first on the leaderboard for sales" in the Knoxville market from October 2015 through February 2016 [Doc. 1 at ¶ 21]. Plaintiff led training sessions for other employees, and he received awards and commendations for his accomplishments [*Id.* at ¶¶ 22—23]. From his start date on September 15, 2015 to December 21, 2015, plaintiff received gross compensation in the amount of $22, 919.84 from Cellular Sales [Doc. 19-1 at ¶ 12]. From January 1, 2016 through the end of his employment on March 6, 2016, plaintiff received gross

compensation in the amount of $41,380.92 [*Id.*]. Plaintiff was terminated on or about March 7, 2016 [Doc. 10-1 at ¶ 6].[4]

Plaintiff filed this case on December 22, 2017, asserting claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* [Doc. 1 at ¶ 42].

**II.    Analysis**[5]

The Federal Arbitration Act ("FAA") represents a strong public policy in favor of arbitration. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). An arbitration agreement must satisfy two conditions for the FAA to apply: (1) it must be in writing; and (2) it must be part of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The parties do not dispute that the arbitration provision in the Agreement is in writing and that it affects interstate commerce. *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir.), *cert. denied*, 528 U.S. 838 (1999) (cellular telephones are instrumentalities of interstate commerce).

---

[4]Although not material for purposes of the instant motion, the complaint alleges that plaintiff was terminated on March 9, 2016 [Doc. 1 at ¶¶ 12, 21].
[5]It is worth noting at the outset that both parties have submitted materials beyond the complaint for consideration [*see* Docs. 10-1, 10-2, 14-1, 14-2, 14-3, 19-1, 19-2] and neither party has objected to the consideration of these materials. It is also worth noting that defendant's motion is filed pursuant to an unspecified provision of Rule 12(b), although defendant implies that the motion should be considered under Rule 12(b)(1) or 12(b)(6) [Doc. 11 at p. 1, n.1]. The Court need not resolve this issue in light of the Sixth Circuit's directive that a party challenging the validity of an arbitration agreement must present a genuine issue of material fact, discussed *infra*. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a valid arbitration agreement governs a claim, courts must compel arbitration. *Id.* §§ 3–4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 812 (6th Cir. 2008) (quoting *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003). *See NCR Corp.*, 512 F.3d at 813 ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration") (quoting *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)).

When considering a motion to compel arbitration, a court has four tasks. *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001). The Court must determine: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable"; and (4) whether to dismiss the action or stay the remainder of the proceedings pending arbitration. *Id.*[6]

Plaintiff raises several arguments as to the enforceability of the arbitration agreement. If the validity of the agreement to arbitrate is "in issue," then the Court must

---

[6]Plaintiff has raised no argument that claims for employment discrimination are nonarbitrable. *Stout*, 228 F.3d at 714; *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

first resolve that question. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). In order to meet this burden, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard. *Great Earth*, 288 F.3d at 889. In other words, the plaintiff must present evidence "such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id*. As plaintiff is opposing arbitration, he must offer "concrete evidence from which a reasonable juror could" find that this matter should not be compelled to arbitration. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).

A. <u>Whether the Agreement is an Adhesion Contract or Lacking Mutual Assent</u>

Plaintiff summarily argues that the Agreement "is an adhesion contract and lacks mutual assent" [Doc. 14 at ¶ 21]. Under Tennessee law, an adhesion contract is "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 975–76 (6th Cir. 2007) (quoting *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996)). However, a contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis. Plaintiff must also present evidence of "the absence of a meaningful choice

8

for the party occupying the weaker bargaining position." *Cooper*, 367 F.3d at 501—02 (6th Cir. 2004).

Cellular Sales does not really dispute that the Agreement is a standardized form offered to employees on a 'take it or leave it' basis. Instead, Cellular Sales correctly notes the absence of any evidence that plaintiff could not obtain other employment or that he attempted to obtain other employment. *See Cooper*, 367 F.3d at 502. The record reflects that plaintiff was employed by HH Gregg at the time he was recruited to work for Cellular Sales and there is no indication that plaintiff could not have continued his employment at HH Gregg if the terms of employment at Cellular Sales were unsatisfactory. Indeed, plaintiff claims he was very successful at HH Gregg. *See* Doc. 1 at ¶ 18 (plaintiff "was Top 10 in the Southern Market, and on pace for President's Club in 2016"). Thus, plaintiff has not presented evidence that he had "no realistic choice but to acquiesce" to the arbitration provision in the Agreement. *See Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 490 S.W.3d 800, 816 (Tenn. Ct. App. 2015).

On the issue of mutuality of assent, often referred to as a "meeting of the minds," courts must apply an objective standard based upon the parties' manifestations. *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). In other words, whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that the parties agreed to be bound by the terms of the contract. *Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007). Although he does not recall signing the Agreement, plaintiff does not dispute that he did so. Thus, he "is presumed to have read the contract and is bound by its contents." *Wofford*,

490 S.W.3d at 810 (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn.2011)).

"To hold otherwise would make contracts not "'worth the paper on which they are written.'" *Id.* The Agreement contains a plain and bold warning that the arbitration provision affects the employee's rights to pursue claims against Cellular Sales. Further, plaintiff accepted employment with Cellular Sales and continued employment there for approximately six months. Beyond his cursory argument, he has presented no evidence, much less concrete evidence, that the parties did not intend to be bound by the Agreement. Accordingly, the Court finds that the Agreement does not lack mutual assent.

    B.    <u>Whether the Agreement is Unconscionable</u>

Plaintiff argues that the arbitration clause is procedurally unconscionable because of his "lack of bargaining power" [Doc. 14 at ¶ 20]. Plaintiff further contends that the Agreement is substantively unconscionable because he "had virtually no time to consider the arbitration provision contained in the Dealer Compensation Agreement and the option afforded Plaintiff to contact lawyer [sic] if he chose was not a realistic opportunity under the circumstances" [*Id.* at ¶ 20].

In Tennessee, "[u]nconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." *Trinity Industries, Inc. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001). Courts "have tended to lump the two together and speak of unconscionability resulting 'when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest

and fair person would accept them on the other.'" *Id.* at 171 (quoting *Haun v. King,* 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); *see Skaan v. Fed. Exp. Corp.,* No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *9 (Tenn. Ct. App. Dec. 13, 2012). "In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case." *Haun,* 690 S.W.2d at 872 (quoting *Brenner v. Little Red Schoolhouse, Ltd.*, 274 S.E.2d 206, 210 (N.C. 1981)); *Dortch v. Quality Rest. Concepts, LLC*, No. 1:12-CV-198, 2013 WL 1789603, at *3 (E.D. Tenn. Apr. 26, 2013) (Collier, J.).

As noted previously, plaintiff cannot show an absence of meaningful choice; he already had a successful sales job at the time he was recruited by Cellular Sales. There is no indication that he could not have continued his employment with HH Gregg or sought employment elsewhere if he was dissatisfied with the terms of employment offered by Cellular Sales. Thus, he has not presented evidence the Agreement is procedurally unconscionable.

Even if the Agreement was a contract of adhesion, it is enforceable unless plaintiff can also show it is substantively unconscionable. *Cooper*, 367 F.3d at 503. Plaintiff has presented no evidence that the Agreement is unreasonably harsh or oppressive. As Cellular Sales notes and as discussed *supra*, plaintiff does not deny signing the Agreement nor does he contest the validity of his electronic signature [see Doc. 19 at pp. 3—4]. Although plaintiff points out that Cellular Sales did not sign the Agreement [Doc. 14 at ¶ 22], he does not contend that Cellular Sales failed to perform its duties under the Agreement, including as to his compensation, over the term of his employment. Plaintiff suggests that *if* he did sign the Agreement, it "would have been done … under significant time pressure during

11

on-site training" [Doc. 14-3 at ¶ 4]. This testimony is vague at best and could easily be characterized as speculative. Plaintiff's statement is contradicted by Ms. Twilla's testimony that plaintiff had nearly two days in which to consider the Agreement, along with other pre-employment forms and policies. There is no evidence in the record that plaintiff ever raised questions or concerns about the Agreement, nor did he request additional time to discuss the Agreement with a lawyer. Further, although he complains that he did not receive a copy of the Agreement, plaintiff could have printed his own copy or reviewed it online at any time.

After considering all the facts and circumstances, the Court finds that the Agreement is neither procedurally nor substantively unconscionable. The Agreement represents the parties' valid agreement to arbitrate their disputes.

C. Whether Plaintiff's Claims are Subject to the Agreement

Plaintiff summarily asserts that the Agreement "does not expressly cover claims of discrimination based on religion and color" [Doc. 14 at ¶ 18]. As set forth in the complaint, plaintiff has asserted discrimination claims pursuant to Title VII, 42 U.S.C. § 1981, and the THRA [Doc. 1 at ¶ 2]. The Agreement covers "[a]ny controversy or dispute between Dealer and Cellular Sales" and "any claim of employment discrimination under federal or state law, such as, but not limited to, discrimination based on age, disability, national origin, race, or sex" [Doc. 10-1 at pp. 11—12]. Thus, the Agreement specifically includes claims of employment discrimination under federal and state law, precisely the claims which plaintiff asserts. *Cf. AT &T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986) (only an "express provision excluding a particular grievance from arbitration" or

"the most forceful evidence of a purpose to exclude the claim from arbitration can prevail"); *see Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) ("broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview"). Plaintiff has presented no evidence or developed argument as to why his claims would not be encompassed by the arbitration provision of "*any* claim of employment discrimination under federal or state law." Accordingly, the Court finds that plaintiff's claims are within the scope of the Agreement's arbitration clause.

D. Jury Waiver

Next, plaintiff argues that the arbitration agreement is unenforceable because he did not knowingly, intelligently, and voluntarily waive his right to a jury trial [Doc. 14 at ¶¶ 15—17]. Plaintiff suggests that his "profile …, his experience, background, and level of education" would make such a waiver unconscionable [*Id*. at ¶ 17].

Although the Sixth Circuit has held that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate," *Cooper*, 367 F.3d at 506 (quoting *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002)), the waiver of the right to a jury trial must be knowing and voluntary. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420 (6th Cir. 2011) (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985)). In evaluating whether a plaintiff knowingly and voluntarily waived his right to pursue employment claims in court, the Court considers: (1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the plaintiff had an opportunity to consult with a lawyer; (3) the

clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Id.* at 420–21 (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)).

With respect to the first factor, Cellular Sales notes plaintiff's own testimony that he has a GED, some college attendance, and was "recruited" to leave his position with HH Gregg to work for Cellular Sales [Doc. 19 at p. 10]. Cellular Sales also relies on public records of plaintiff's current licensure as a real estate agent in Tennessee, as well as the social media pages from plaintiff's real estate firm [Doc. 19-1 at pp. 11—20]. Cellular Sales' records reveal that plaintiff received gross compensation totaling $64,300.76 in only six months of employment [Doc. 19-1 at ¶ 12]. Thus, Cellular Sales argues that plaintiff's education and higher compensation weigh in favor of enforcing the agreement.

The Court agrees. Plaintiff has not disputed the evidence submitted by Cellular Sales, and the Court accepts it as true for purposes of the pending motion. Thus, the evidence reveals a plaintiff who is literate with sophisticated work experience. There is no indication that the plaintiff could not understand the Agreement or its ramifications. Further, plaintiff was successfully employed at the time he was recruited to work for Cellular Sales and thus was not in "dire financial circumstances" at time of his application. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir.), *cert. denied*, 546 U.S. 1030 (2005). Accordingly, the Court finds that this factor weighs in favor of a knowing and voluntary waiver.

As for the second factor, plaintiff speculates that "if" he signed the Agreement, "it would have been done under significant time pressure" during training and completion of

paperwork [Doc. 14-3 at ¶ 4]. He further states that he "had no time to consider the arbitration provision" in the Agreement [*Id*. at ¶ 5]. As noted, plaintiff's testimony is vague at best. In response, Cellular Sales contends that plaintiff reviewed the Agreement and other pre-employment forms electronically at his home [see Doc. 19-1 at ¶¶ 3—5]. Thus, Cellular Sales contends that plaintiff had from September 8, 2015, until the morning of September 10, 2015, to review the Agreement [*Id.* at ¶ 6]. Plaintiff never requested additional time to review or confer with legal counsel regarding the Agreement, a point that appears to be undisputed [*Id.* at ¶ 10]. Thus, the Court is presented with plaintiff's testimony that he "had no time" to consider the Agreement "if" he signed it, and Cellular Sales' evidence that plaintiff had close to two days to consider it. Accordingly, in light of the dispute as to the amount of time plaintiff had to review the Agreement, the Court finds that this factor does not weigh in favor of nor against a knowing and voluntary waiver.

The third factor for consideration is the clarity of the waiver. Plaintiff correctly notes that the Agreement does not contain an express waiver of his right to a jury trial [Doc. 14 at p. 5]. However, the Agreement warns the employee in plain language: "**READ THIS NEXT SECTION CAREFULLY AS IT AFFECTS YOUR RIGHT TO PURSUE CLAIMS AGAINST CELLULAR SALES**" [Doc. 10-1 at p. 11]. The Agreement also plainly explains, "all disputes … must be arbitrated" [*Id.* at pp. 11—12]. Further, as Cellular Sales points out, the Sixth Circuit "has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial." *Cooper*, 367 F.3d at 506. Instead, such a waiver is considered "a necessary and fairly obvious consequence of an agreement to arbitrate." *Id.* (quoting *Burden*, 267 F.3d at 492).

15

In light of the Agreement's bold warning and plain language covering "all disputes," the Court finds that plaintiff could easily understand the arbitration provision to be a waiver of his right to a jury trial. The Court finds that this factor weighs in favor of a knowing and voluntary waiver.

Regarding the fourth factor, plaintiff's acceptance of the Agreement was a condition of his employment and continued employment [Doc. 10-1 at ¶ 5]. Moreover, a mutual promise is sufficient consideration to support an agreement to arbitrate under Tennessee law. *Sellers v. Macy's Retail Holdings, Inc.*, No. 2:12-CV-02496-SHL, 2014 WL 2826119, at *8 (W.D. Tenn. June 23, 2014) (quoting *Seawright*, 507 F.3d at 974). The arbitration provision at issue is just such an agreement. The Court finds that this factor weighs in favor of a knowing and voluntary waiver.

Finally, the totality of the circumstances convinces the Court that plaintiff knowingly and voluntarily waived his right to a jury trial. "[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions" and thus plaintiff "cannot be excused from complying with the arbitration provision if [he] simply failed properly to read the contract." *See Inland Bulk Transfer Co. v. Cummins Engine Co.,* 332 F.3d 1007, 1016 (6th Cir. 2003) (internal citations and quotation marks omitted). Although plaintiff suggests he had "no time" to consider the Agreement, he has presented no evidence that he was prevented from reviewing the terms of the Agreement with Cellular Sales or that he was incapable of understanding its terms.

After considering all of the foregoing factors, the Court finds that the cumulative weight of the factors support a waiver. Thus, the Court concludes that plaintiff has

knowingly and voluntarily waived his right to a jury trial. The Court finds that the parties have entered into a valid and enforceable agreement to arbitrate any disputes between them, including the claims raised in this case.

    E.    <u>Whether the JAMS Rules are Unconscionable</u>

The Agreement provides that all disputes between the parties shall be resolved by "final and binding arbitration administered by JAMS under its Employment Arbitration Rules & Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute" [Doc. 10-1 at p. 11]. Plaintiff contends that the JAMS rules are unconscionable because of the "potential conflict between JAMS financial interests and its ability to provide a neutral arbitration service" [Doc. 14 at ¶¶ 25—26]. Plaintiff further argues, "JAMS interest in maintaining the satisfaction of its corporate clients would engender a bias which would render arbitration fundamentally unfair" [*Id.* at ¶ 26].

As Cellular Sales points out, plaintiff has presented no evidence of bias or impartiality by JAMS [Doc. 19 at pp. 19—20]. The Court notes that the Agreement imposes a mutual obligation on the parties to arbitrate any and all disputes. Moreover, the JAMS Employment Arbitration Rules submitted by plaintiff indicate that both parties participate in selecting the arbitrator. The Court cannot presume that arbitration through JAMS would be biased without any particularized evidence showing a lack of impartiality. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)

Plaintiff also contends that arbitration "would be prohibitively expensive" for him because the JAMS rules require each party to pay its "pro rata share" of the fees and

17

expenses [*Id.* at ¶¶ 27, 30]. Plaintiff admittedly does not have the current JAMS professional fee schedule, but he speculates the "professional fees for JAMS arbitrators range between $500.00-$750.00 per hour" [*Id.* at 28—29]. Cellular Sales points out that the JAMS rules specify that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, *the only fee that an employee may be required to pay is the initial JAMS Case Management Fee*" [Doc. 19 at p. 21; Doc. 14-2 at p. 26 (emphasis added)]. Similarly, the JAMS Demand for Arbitration Form, submitted by Cellular Sales, states that, "[f]or matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400.00" [Doc. 19-2 at p. 3]. Counsel for Cellular Sales states that it has "always paid all of the arbitration fees associated with such arbitrations, including the initial JAMS Case Management Fee" and "intends on paying all of the JAMS arbitration fees associated with this matter, including the initial JAMS Case Management Fee" [Doc. 19-2 at ¶¶ 6—7].

"The 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.*, 531 U.S. at 91. Based on the present record, plaintiff's speculation that arbitration will be cost-prohibitive is just that, speculation. It appears that the applicable JAMS rules would only require plaintiff to pay an initial $400.00 case management fee[7] and that Cellular Sales regularly covers this expense for its employees and intends to do so in this case. Moreover, any additional costs that plaintiff might incur during arbitration – such as attorney fees or

---

[7]The $400.00 JAMS case management fee is comparable to what plaintiff has already paid to initiate this case [*see* Doc. 1].

expert witness fees – are no different than plaintiff would incur during judicial proceedings. Accordingly, the Court does not find that the JAMS rules are procedurally unconscionable or that arbitration will be cost prohibitive to plaintiff.

F. Remedy

In light of the Court's conclusion that the parties have entered into an enforceable arbitration agreement and the agreement covers the instant dispute, the Court next considers the appropriate remedy. Cellular Sales argues that because all claims must be arbitrated, dismissal of this action is appropriate [Doc. 11 at pp. 11—12]. Plaintiff has not weighed in on the appropriate remedy beyond the denial of defendant's motion.

The Sixth Circuit has stated that "'[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.'" *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)); *Hensel v. Cargill, Inc.,* No. 99–3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Gassner v. Jay Wolfe Toyota,* No. 4:06–CV–1335 CAS, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Because all of plaintiff's claims are arbitrable, the Court can find no reason to stay this matter pending arbitration.

## III. Conclusion

For all of the foregoing reasons, the Court finds that the parties have entered into a valid arbitration agreement and that all of plaintiff's claims fall within its scope. Accordingly, the Court is compelled to order the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Therefore, defendant's motion to compel arbitration [Doc. 10] will be **GRANTED** and plaintiff's claims will be dismissed. An appropriate order will be entered.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE